Geneva BROOKS, Plaintiff-Respondent,

v.

GENERAL MOTORS ASSEMBLY
DIVISION, Defendant-Appellant.

No. 36601.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 26, 1975.

John L. Harlan, Jr., Clayton, for defendant-appellant.

Jack Randall, St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

The defendant has appealed from the judgment of the circuit court affirming the award of the Industrial Commission in which it was determined that Geneva Brooks, the plaintiff, had suffered an injury to her back in an accident arising out of and in the course of her employment. This resulted in permanent total disability. For this, she was to receive the sum of $58.00 per week for 300 weeks, and thereafter, for life, as a pension, $40.00 per week; or a total sum of $17,400.00 plus pension. In addition, medical aid not furnished by the employer was awarded to her in the sum of $3,778.13.

Defendant has appealed, contending that the evidence presented was overwhelmingly in favor of the defendant and that it did not sustain the finding of accident, the finding of injury arising out of the accident, and the finding of permanent total disability. Plaintiff, on the other hand, contends that the award of the Commission and the judgment of the circuit court was supported by evidence totally favorable to the employee and susceptible of but one construction. She further contends that since there was no justiciable controversy on appeal, the

appeal is spurious and vexatious and an appropriate penalty should be imposed.

Geneva Brooks, the claimant before the Commission and plaintiff-respondent on appeal, had been an employee of General Motors seventeen years when she was involved in an accident on August 25, 1971. She testified that she was working at her place of employment on sub-assembly trim when an industrial truck or gondola, used to bring in materials, tangled with the stock. In trying to extricate the stock, the gondola moved and she was pinned back against a steel bin. At this time she felt sharp pain in the middle to lower part of her back. She informed her foreman, Paul Pritchett, of her injuries, and he assisted her in straightening out the materials. Because it was a matter of minutes before the end of the working period on her shift, she did not report to the nursing station but remained at her job and went home at the conclusion of her work period. She never returned to work.

A fellow employee, Josephine Clutter, testified that she heard Mrs. Brooks scream. She walked over to her and found that she had been thrown back against what she described as a "skid" which was about three feet high, and that she was between this and another of the same height in a leaning back position. She heard Paul Pritchett, the foreman, tell her he hoped she was not hurt when he walked up after this occurred. Mrs. Clutter gave this information to the employer at a later time.

Plaintiff saw her doctor, Leon Fox, who had previously performed surgery on her in 1970. At that time, a myelogram had revealed abnormal intervertebral spaces in the lumbosacral area. After a laminectomy she quickly recovered and returned to work without complaint.

Following the accident of August 25, 1971, she again placed herself in the care of Dr. Fox who, after conservative treatment, again recommended a laminectomy. When she was examined at the time of the proposed surgery, the doctor found that he could not operate because of her blood pressure. Then in the summer of 1973 she had a heart attack and has been under treatment for her heart condition since that time. Dr. Edward H. Bowdern, who examined her February 13, 1973, before the heart attack, stated that in his opinion she was totally and permanently disabled due to a recurrent ruptured disc. This was shown in a myelogram carried out on October 4, 1971 by Dr. Fox which revealed defects in the lumbar vertebrae. It was Bowdern's opinion that Mrs. Brooks was totally and permanently disabled. As to whether she might have corrective surgery, he stated: "Anyone who has had any cardiac problems is not a candidate for major surgery."

It was evident that defendant had been informed of her condition. The supervisor of the benefits plan administration at the plant where she worked, whose duties involve supervision of compensation cases, stated that his records indicated that she was on total disability pension benefits and retirement.

Defendant called as a witness Paul Pritchett, the foreman who was allegedly present at the time of the injury. He had no recollection of the incident nor that plaintiff had informed him as to what happened. He stated that he could not remember anything about the matter. A medical report dated January 3, 1973 of an examination by a physician employed by the defendant introduced in the evidence gave his opinion that following an examination confined to her back and the lower extremities, he was under the impression that she was disabled from any type of work that she might do on the assembly line. If she had a fusion procedure that was successful, he thought this might leave her with less discomfort, but he still thought that she would most likely not be a suitable candidate for assembly line work. He gave her a disability rating of 30% of the woman as a whole.

Standards for judicial review of an award made by the Industrial Commission are set out in Mo.Const., Art. V, § 22,

and § 287.490, RSMo 1969. The statute directs that the court on appeal shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of these grounds: "(1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award." But the Constitution in Art. V, § 22 makes a "broader review the minimum standard which may be established for review in any case decided on a hearing before an administrative officer or body." *Wood v. Wagner Electric Corporation,* 355 Mo. 670, 197 S.W.2d 647, 649 (banc 1946). This minimum standard requires that the award be "supported by competent and substantial evidence upon the whole record." Mo.Const., Art. V, § 22, *supra.* This is self-enforcing and requires no legislation to make it effective. As interpreted, it means that the reviewing court may not substitute its own judgment on the evidence for that of the administrative tribunal, but it does authorize the court to decide whether the tribunal could have reasonably made its findings, and reached its results, upon consideration of all the evidence before it. Decisions clearly contrary to the overwhelming weight of the evidence may be set aside. *Wood v. Wagner Electric Corporation, supra* at 649[1–3]. The term "substantial evidence" both implies and comprehends competent evidence and is evidence which if believed would have a probative force upon the issues. *State ex rel. Rice v. Public Service Commission,* 359 Mo. 109, 220 S.W.2d 61, 64[3] (banc 1949). An appellate court, upon review of a case, after a determination by an administrative board, "as a matter of law passes upon the matter of substance and not of credibility. In other words, an appellate court may say that particular evidence is substantial if the triers of the facts believed it to be true." *State ex rel. Rice v. Public Service Commission,*

*supra* at 65[7]. In examining the record and applying these standards, a reviewing court must view the record in a light most favorable to the findings of the tribunal considering the favorable inferences which the tribunal had a right to draw from the evidence before it, and then determine whether the tribunal's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence. *Thacker v. Massman Const. Co.,* 247 S.W.2d 623, 627[2] (Mo. 1952). But the weight of the evidence is not the quantity or the amount thereof. Rather it is the weight and probative value; its effect in inducing belief. *Land Clearance for Redevelopment Authority of the City of Joplin v. Joplin Union Depot Company,* 429 S.W.2d 806, 813 (Mo.App.1968).

■ It is true that, as defendant contends, plaintiff had the burden of proof on all the material elements of her claim. But all of the substantial evidence as outlined above proved that plaintiff had suffered an injury as the direct result of an accident which had occurred at the place of her employment, arising out of and in the course of that employment. Competent and substantial medical evidence supported the determination of the commission that as a result of this accident she was caused to become permanently and totally disabled. Clearly the evidence in this case calls for an affirmance of the award of the Industrial Commission. There is little evidence, if any, that is contrary to that offered by the plaintiff.

■ The question then remains as to whether the appeal in this case was of such a frivolous nature as to justify the imposition of an award for damages under Rule 84.19. This court has previously determined that a frivolous appeal is one in which no justiciable question has been presented and the appeal is readily recognizable as devoid of merit in that there is little prospect that it can ever succeed. *State ex rel. State Highway Commission v. Sheets,* 483 S.W.2d 783, 785[4] (Mo.App.

1972). Our courts have been reluctant to apply the provisions of this rule and its predecessor, Rule 83.13(d), which authorized an imposition of damages not exceeding ten percent of the amount of the judgment. *Universal C.I.T. Credit Corporation v. State Farm Mutual Automobile Insurance Company,* 493 S.W.2d 385, 390 (Mo.App.1973). But where it is apparent from the record that the appeal is so devoid of merit as to make the conclusion inevitable that it was not taken in good faith, then such an appeal has been considered vexatious and damages have been awarded. The test seems to be that the questions raised on appeal must be at least fairly debatable to clear it of the charge of being frivolous or vexatious. *De-Mayo v. Lyons,* 243 S.W.2d 967, 970[4, 5] (Mo.1951).

Here, the only contention on appeal was: "The evidence presented is overwhelming that claimant did not suffer any accident on August 25, 1971, and that if she did have an accident on August 25, 1971 that she did not sustain any injury on that occasion, and that if she did sustain any injury on August 25, 1971 such injury does not justify any award for disability either partial or total, temporary or permanent, and certainly does not justify any award for permanent total disability and a pension for life under Workmen's Compensation Act and such award should be set aside." From our review of the evidence, the overwhelming weight of that evidence favored the plaintiff. In fact, the only substantial evidence sustained plaintiff's claim. The Industrial Commission made its award on April 1, 1974 which was affirmed by the circuit court on October 11, 1974. It is now nearing September of 1975. Such a delay in payment of a valid award can only act to the advantage of the defendant company because interest thereon in this day of high interest rates is charged by law at the relatively low rate of six percent. We believe that it would be just to award damages in the amount of six percent in addition to the interest authorized by law.

The judgment of the circuit court affirming the award of the Industrial Commission is affirmed and plaintiff is awarded damages against the defendant in the amount of six percent of the judgment herein; that is, the amount of $17,400.00 awarded for permanent total disability and the necessary medical aid not furnished by the employer or insurer in the sum of $3,778.13.

DOWD and RENDLEN, JJ., concur.