**WOODLEY–GRIGGS BOILER REPAIR, INC., Plaintiff-Respondent,**

**and**

**Thomas C. Rose, Respondent,**

**v.**

**Mrs. Walter SANDERS, G. A. Bauer, and E. Sanders, Defendant-Appellant.**

**No. WD 32022.**

Missouri Court of Appeals,
Western District.

Dec. 15, 1981.

Robert C. Jones, Jones & Frankum, Kansas City, for appellant.

J. Douglas Irmen, Happy, House, Cooling, Bradford & Irmen, P. C., Kansas City, for Woodley-Griggs.

Daniel J. Flanigan, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, for Thomas C. Rose.

Before TURNAGE, P. J., PRITCHARD and CLARK, JJ.

TURNAGE, Presiding Judge.

After obtaining a judgment in the amount of $3,653.03 for the installation of a boiler in an apartment house, Woodley-Griggs requested the issuance of a general execution to satisfy that judgment. The house was sold and Mrs. Walter Sanders, a/k/a Mrs. E. Sanders, filed a motion to set aside the sale. On the court's refusal to set aside the sale, this appeal by Sanders followed.

Sanders raises a number of points relating to notice prior to the entry of the judgment, the issuance of a general execution and the inadequacy of the sale price. Affirmed.

In March, 1979, Woodley-Griggs filed suit against Mrs. Walter Sanders for a boiler installed in an apartment house which the petition alleged was owned by Mrs. Walter Sanders. Mrs. Walter Sanders filed an answer which she signed and in which she denied the paragraph alleging her ownership of the house. Thereafter request for admission of facts was filed by Woodley-Griggs and again the ownership of the house by Mrs. Walter Sanders was denied in a response signed by her attorney.

The deposition of Mrs. Walter Sanders was taken and she was asked specifically: "Who owns that property?" Her reply was: "Well, it is owned by a party named Bauer." When asked if Bauer were a man or a woman, she replied he was a man. She said, in response to a question as to where he lived, that he traveled a lot and she thought he was in Mexico. She stated that she managed the apartment house for him under a verbal agreement.

She stated Bauer obtained the property from her husband prior to her husband's death. When asked if she knew if anyone else owned the property with Bauer, she replied: "No, I don't. I think he may have some associates, I don't know." Apparently the denial by Mrs. Walter Sanders that she owned the property or had any interest in it caused a title search to be made which revealed the names of E. Sanders and G. A. Bauer as the owners of the property.

An amended petition was filed alleging E. Sanders and G. A. Bauer as the owners, but also naming Mrs. Walter Sanders. Service of the amended petition was had upon Mrs. Walter Sanders, but as to E. Sanders and Bauer, service was by publication. Mrs. Walter Sanders filed an answer to the amended petition by attorney, in which she denied all allegations. No responsive pleading was filed by E. Sanders or G. A. Bauer.[1]

Notice that judgment by default[2] would be taken against E. Sanders and Bauer was mailed to Mrs. Walter Sanders' address and received by her. On the day noted in the notice, no one appeared for Sanders or Bauer and judgment was entered on January 2, 1980.

After issuance of a general execution, the apartment house was sold on February 15, 1980, to Thomas C. Rose for the sum of $26,000. On May 14, 1980, Mrs. Walter Sanders filed an application for the net proceeds of the sale after payment of the judgment and costs and in which, for the first time, she stated that she was also Mrs.

---

1. Bauer has made no appearance on this appeal.

2. Although Woodley-Griggs thought the judgment would be a default, in fact it was not a default as that term is frequently used. Rather, the judgment was entered against an answering defendant, as far as Sanders is concerned, who fails to appear at trial in person or by counsel. *Hamm v. Hamm*, 437 S.W.2d 449, 452[1] (Mo.App.1969). It is true Woodley-Griggs at that time did not realize it was dealing with one Sanders and not two, but that fact was known to Sanders and her appearance and answer prevented the judgment from being a default in the sense of a defendant who is served but does not file an answer or make an appearance.

E. Sanders. She coupled this motion with a motion to set aside the execution sale. On June 26, after a hearing, the court denied the motion to set aside the sale and this appeal by Sanders followed.

Sanders raises four points in which she attempts to challenge the validity of the judgment on grounds of insufficient notice to Mrs. E. Sanders of the pendency of the suit and that a default judgment would be entered. At the outset the issues attempted to be raised will be simplified by pointing out that since Mrs. E. Sanders and Mrs. Walter Sanders are one and the same person, then all notices received by Mrs. Walter Sanders were equally applicable to Mrs. E. Sanders. There is no complaint that notice was not received and that Sanders was not advised at all stages of the proceeding as to the hearings that were held and the judgment that was entered. Sanders seeks to perpetuate on appeal the confusion she created in the trial court by arguing the case as if Mrs. E. Sanders and Mrs. Walter Sanders were two separate persons. Her points on appeal dissolve when it is remembered that only one person is involved and notice to one was all that was required.

The contentions relating to notice to E. Sanders prior to the judgment are fully answered in *State ex rel. Jones v. Reagan*, 382 S.W.2d 426, 430[7–11] (Mo.App.1964), when the court stated:

> "The motion to quash the execution could have merit only if the judgment was void for lack of jurisdiction of the parties, or the subject matter. *McDougal v. McDougal*, Mo.App., 279 S.W.2d 731, 740. No such point was made here. A motion to quash does not lie to collaterally attack alleged errors or defects prior to judgment. *Vorhauer v. Sweeney*, Mo.App., 217 S.W.2d 985. Where the execution substantially pursues the judgment, there is no fault in the execution. That is the case here, and since the execution was regular, the trial court had no authority to withhold from plaintiff funds which were legally collected in her behalf."

The situation here is the same as it was in *Reagan*. Sanders does not contend the court did not have jurisdiction of the parties or the subject matter when it entered judgment. Therefore, Sanders may not in an appeal from the motion to set aside the sale collaterally attack the judgment. Sanders' attempt to raise issues on this appeal that Mrs. E. Sanders was not properly served are patently erroneous in view of the fact that Mrs. Walter Sanders was personally served and those two are one and the same.[3]

Sanders next contends the court erred in refusing to set aside the execution sale because a general judgment had been entered and a general execution was issued when a special judgment and execution were called for because Mrs. E. Sanders was served by publication. As noted, there can be no distinction in the service when Mrs. E. Sanders and Mrs. Walter Sanders are one and the same and Mrs. Walter Sanders was served personally. Beyond that, no prejudice has been shown in the issuance of a general execution since only the involved property was sold and this was the property which would have been subject to any special judgment. *McAllister v. Garrett*, 591 S.W.2d 31, 33[8] (Mo.App.1980).

Sanders finally contends the sale should have been set aside because the sale price was so insufficient as to shock the conscience of the court. At the hearing on the motion to set aside the sale, Sanders testified and admitted in open court that she was both Mrs. Walter Sanders and Mrs. E. Sanders. She stated in her opinion the property was worth $135,000. Thomas Rose, the purchaser at the execution sale, testified that he valued the property at $40,000 because of the extreme rundown condition of the property. There was evidence that the city had sent notices of building violations prior to the judgment, and Rose testified that after he purchased

---

**3.** This also disposes of the argument that E. Sanders had not appeared in the suit from the time Mrs. Walter Sanders filed an answer.

the property he found the roof leaked, there were 34 cracked windows, and there were seven apartments but only two tenants. Rose also testified plaster was falling from the ceiling brought about by the leaky roof. Rose stated he had spent over $16,000 on repairs to the house since his purchase. Rose testified that he and one other person, unknown to him, were the only bidders at the sale. There was no evidence to indicate that the sale was other than a fair public sale with two adversary bidders. The trial court did not believe the sale price to be inadequate.

The applicable rule is stated in *Wieser v. Linhardt*, 257 S.W.2d 689, 690[2] (Mo.1953) when the court stated that a sale under execution will not be set aside on mere inadequacies of consideration, but added:

> " 'However, an exception to said rule is stated by a standard text as follows: "Inadequacy of consideration, if it be so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such cases the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby". Kerr on Fraud and Mistake, 161, citing many authorities.' *Ellis v. Powell*, Mo.Sup., 117 S.W.2d 225, 226."

Sanders argues inadequacy of consideration based only on her own testimony as to the value of the property and reargues her points concerning irregularities in service because of the service by publication directed to Mrs. E. Sanders. She states these irregularities in service, together with the sale price constitute fraud. The irregularities in service argument has been fully answered above. Based on the evidence it cannot be said that the sale price was so inadequate as to shock the conscience of the court as to justify the setting aside of the sale. In fact, Sanders herself does not seriously argue that the sale price was so inadequate as to shock the conscience of the court, but relies mainly on the reargument of the irregularities of the service. The trial court was correct in overruling the motion to set aside the sale and the judgment is affirmed.

Woodley-Griggs and Rose have each filed a motion to assess damages against Sanders for a frivolous appeal under Rule 84.19. The purpose of assessing damages for frivolous appeals is to protect the appellate dockets from unmeritorious cases which delay the resolution of cases with merit and to compensate respondents for expenses incident to the appeal of unmeritorious claims. *Wright v. Sprague*, 563 S.W.2d 165, 166[2] (Mo.App.1978). To avoid the penalty the questions presented on appeal must be at least fairly debatable. *Branson v. Jordan*, 571 S.W.2d 707, 709[3] (Mo.App.1978).

On this appeal Sanders raises points concerning the service by publication on Mrs. E. Sanders when the record shows she engaged in a deliberate process of denying under oath that she owned the property and made every effort to prevent Woodley-Griggs from obtaining a judgment against her. After these efforts had failed, she finally admitted her dual identity to recover the proceeds of the sale left after payment of the judgment and costs. On this appeal she raised four points concerning service by publication on Mrs. E. Sanders when personal service had been made upon Mrs. Walter Sanders. She argued this case as if Mrs. E. Sanders and Mrs. Walter Sanders were two entirely separate persons, but yet in her brief concedes they were one and the same. No more frivolous appeal could be imagined. The other points relating to the general judgment and general execution and inadequate sale price are both so devoid of merit that little discussion was required. Sanders made no real effort to develop these points and indeed under the record had no room to do so.

The motions to assess damages for frivolous appeal are sustained. After payment of the judgment and costs, $20,693.13 remains to be distributed. This court assesses damages against Mrs. Walter Sanders a/k/a Mrs. E. Sanders of $2,500, with such

sum to be divided equally between Wood-ley-Griggs and Thomas Rose.

All concur.